

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE [illegible]

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **09 CR 302** |
| v. | ) | Violations: Title 7, United States Code, Sections 6b(a)(1)(i), 13(a)(2) and 13(a)(5); Title 18, United States Code, Section 1343 |
| EDWARD C. SARVEY and DAVID G. SKLENA | ) ) ) | |

COUNT ONE
(Wire Fraud)

F I L E D

Mar 31, 2009
MAR 31 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

The SPECIAL FEBRUARY 2008-1 GRAND JURY charges:

1. At times material to this indictment:

**Background**

a. Futures contracts were traded on contract markets (commonly known as exchanges and boards of trade) designated pursuant to the Commodity Exchange Act by the Commodity Futures Trading Commission (CFTC), the federal agency established by statute to regulate transactions involving the purchase and sale of futures contracts. The Chicago Board of Trade (CBOT) was one of these designated contract markets. The CBOT is currently part of the CME Group, Inc.

b. Futures contracts were standardized, legally binding agreements to buy or sell a specific product or financial instrument in the future. The buyer and seller of a futures contract agreed on a price today for a product or financial instrument to be delivered or settled in cash on a future date.

c. Five-Year Treasury Note futures contracts were interest rate futures contracts traded on the floor (in a "trading pit") of the CBOT between 7:20 a.m.

and 2:00 p.m. The contract unit of trading was a Treasury Note having a face value at maturity of $100,000. The price of the contract was quoted in points and each point equaled $1,000. The particular futures contract in this case was the June 2004 Five-Year Treasury Note futures contract.

    d.    The U.S. Bureau of Labor Statistics (BLS) released its Employment Situation Report for the previous month on the first Friday of each month at 7:30 a.m. CST. Trading in Treasury Note futures contracts was usually active on the days the report was released because the report's payroll and employment data tended to affect the market value and the price of Treasury Notes.

    e.    A floor trader was a person authorized to execute futures contract trades on the floor of an exchange. Floor traders who traded for their own account were called "locals" and floor traders who executed orders to buy or sell futures contracts for customers were called "brokers." Some floor traders were "dual traders" meaning that they both traded for their own accounts and they also executed futures contract trades on behalf of customers. Dual traders were required to put the interests of their customers ahead of their own interests when executing futures contract trades on behalf of customers.

    f.    CFTC and CBOT rules required that floor traders execute trades openly and competitively by open outcry in the trading pit during the hours of regular trading. Trading by open outcry occurred when traders bid (to buy) or offered (to sell) either verbally or using gestures in a manner designed to give multiple traders the opportunity to engage in a trade.

2

g. Customers instructed brokers to buy or sell futures contracts using different types of orders. A "sell stop order" was an order to sell a futures contract when a particular price (the "stop price") was offered by a trader in the market, or when a trade in the market occurred at or below that price. Once the stop price was reached, the customer's sell stop order became an order to sell the futures contract at the best price available to the customer in the market at that time.

h. E-cbot was an electronic trading platform used to trade CBOT Five-Year Treasury Note futures contracts, as well as other CBOT futures contracts. E-cbot was used by traders both off the trading floor and in the trading pit. All bids and offers that were submitted from any location worldwide using e-cbot were routed instantly by computer to London, England, where they were matched with corresponding offers and bids to complete a trade. Confirmation and details of the completed trades were then routed instantly by computer back to the locations where the orders were entered for clearing and settlement of the trades.

i. Man Financial (currently known as MF Global) was a clearing firm of the CBOT, and was engaged in the business of futures brokerage. Man Financial's business included submitting its customers' orders to buy or sell futures contracts to brokers in the CBOT Five-Year Treasury Note futures contract trading pit for execution. At the end of each trading day, Man Financial would submit, by email, information concerning its customers' futures contract transactions to Xpedite (currently known as Premier Global Services) in Tinton Falls, New Jersey. Xpedite would use the information provided by Man Financial to prepare daily customer

3

confirmation statements, and would then send those confirmation statements to Man Financial's customers via email.

### Defendants

j.      Defendant EDWARD G. SARVEY was registered as a floor trader with the CFTC, and was an Associate Member of the CBOT. He was a dual trader in that he both executed customer orders and traded for his own account in the Five-Year Treasury Note futures trading pit. He also traded on e-cbot in the trading pit while at the same time trading by open outcry. He started trading in the Five-Year Treasury Note futures trading pit in 1988. When executing customer orders to purchase or sell futures contracts, defendant SARVEY had a duty to use his best effort to obtain the best price for his customers.

k.      Defendant DAVID G. SKLENA was registered as a floor trader with the CFTC, and was an Associate Member of the CBOT. He was a local in that he traded only for his own account in the Five-Year Treasury Note futures trading pit. He also traded on e-cbot in the trading pit while at the same time trading by open outcry. He started trading in the Five-Year Treasury Note futures trading pit in 1992.

### Trading on April 2, 2004

l.      The March 2004 BLS Employment Situation Report was released at approximately 7:30 a.m. and it showed an increase in new jobs. U.S. financial markets reacted to the news with falling Treasury Note prices, and a corresponding decline in Treasury Note futures contracts prices, although the market later rallied.

m. Before the release of the report, defendant SARVEY accepted for execution in the trading pit orders of customers of Man Financial and other clearing firms to sell 2,474 contracts with sell stop prices ranging from 112.195 to 111.065.

n. Just before the release of the report, Five-Year Treasury Note futures contracts were trading at 112.260 in the trading pit. Following the number release at 7:30, the following price activity occurred in the trading pit:

(i) the price dropped to 111.050 at 7:31:35;

(ii) 111.050 was the lowest price after the release of the report; and

(iii) prices reversed and climbed to 111.135 at 7:31:51, and continued to climb to prices above 112.000 after 7:37.

o. At 7:31:35, due to the drop in price below 111.065, defendant SARVEY's sell stop orders became orders to sell futures contracts at the best price available to the customers.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

> EDWARD C. SARVEY and
> DAVID G. SKLENA,

defendants herein, together with others known and unknown to the grand jury, devised, intended to devise, and participated in a scheme to defraud defendant SARVEY's customers and to obtain the customers' money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme is more fully described in the following paragraphs.

5

3. It was part of the scheme that, after 7:37 a.m., defendant SARVEY sold all but 200 of the customers' futures contracts to defendant SKLENA at a price of 111.065, even though the market was trading substantially higher at that time. The trade was not executed openly and competitively as required by CFTC and CBOT rules. Instead, defendant SARVEY sold the futures contracts to defendant SKLENA noncompetitively at a price that was lower than the then prevailing market price and he denied the customers the opportunity to obtain a better price.

4. It was further part of the scheme that defendant SARVEY sold another 100 futures contracts for which he had sell stop orders for public customers noncompetitively at 111.065 to Trader A.

5. It was further part of the scheme that defendant SARVEY sold another 100 futures contracts for which he had sell stop orders for public customers noncompetitively at 111.065 to Trader B.

6. By selling the 2,474 contracts noncompetitively at a price lower than the market price, defendant SARVEY deprived his customers of the opportunity to obtain a better price, but instead executed the customer orders at prices that were advantageous to him, defendant SKLENA, Trader A and Trader B.

7. It was further part of the scheme that, following defendant SKLENA's noncompetitive purchase of 2,274 contracts from defendant SARVEY, defendant SKLENA immediately sold back to defendant SARVEY, in another noncompetitive trade, 485 of the 2,274 contracts at a price of 111.070 even though the market was trading substantially higher at that time.

8. It was further part of the scheme that defendant SKLENA sold the remaining 1,789 (2,274 minus 485) futures contracts from defendant SARVEY shortly after purchasing them. Defendant SKLENA sold them on e-cbot at the higher prices then prevailing in the market and realized a personal gain of approximately $1.65 million.

9. It was further part of the scheme that defendant SARVEY sold the 485 futures contracts from defendant SKLENA shortly after purchasing them. Defendant SARVEY sold them on e-cbot at the higher prices then prevailing in the market and realized a personal gain of approximately $357,000.

10. It was further part of the scheme that defendants SARVEY and SKLENA concealed and misrepresented, and caused to be concealed and misrepresented, the existence, the purposes and the acts done in furtherance of the scheme.

11. As a result of the scheme, defendant SKLENA fraudulently obtained approximately $1.65 million and defendant SARVEY fraudulently obtained approximately $357,000, all at the expense of and to the detriment of defendant SARVEY's public customers. These public customers lost approximately $2,100,000.

12. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

                        EDWARD C. SARVEY and
                        DAVID G. SKLENA,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate and foreign

commerce, certain wirings, signs and signals, namely, defendant SARVEY's e-cbot order # 8264474675 to sell 100 Five-Year Treasury Note futures contracts at 111.295, which order was routed by computer from Chicago, Illinois, to London, England, for matching with a corresponding order to purchase those futures contracts at that price;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO
(Wire Fraud)

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as if fully set out in this count.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> EDWARD C. SARVEY and
> DAVID G. SKLENA,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate and foreign commerce, certain wirings, signs and signals, namely, defendant SARVEY's e-cbot order # 8264474911 to sell 100 Five-Year Treasury Note futures contracts at 111.295, which order was routed by computer from Chicago, Illinois, to London, England, for matching with a corresponding order to purchase those futures contracts at that price;

In violation of Title 18, United States Code, Section 1343.

9

## COUNT THREE
(Wire Fraud)

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as if fully set out in this count.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> EDWARD C. SARVEY and
> DAVID G. SKLENA,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain wirings, signs and signals, namely an email from Man Financial in Chicago, Illinois, to Xpedite in Tinton Falls, New Jersey, which email contained confirmation of Customer A's sale of one Five-Year Treasury Note futures contract at a price of 111.065 on April 2, 2004, and confirmation of Customer B's sale of one Five-Year Treasury Note futures contract at a price of 111.065 on April 2, 2004;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR
(Wire Fraud)

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as if fully set out in this count.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD C. SARVEY and
DAVID G. SKLENA

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain wirings, signs and signals, namely, namely an email from Man Financial in Chicago, Illinois, to Xpedite in Tinton Falls, New Jersey, which email contained confirmation of Customer C's sale of four Five-Year Treasury Note futures contracts at a price of 111.065 each on April 2, 2004;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE
(Wire Fraud)

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as if fully set out in this count.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD C. SARVEY and
DAVID G. SKLENA,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate and foreign commerce, certain wirings, signs and signals, namely, defendant SKLENA's e-cbot order # 8264458594 to sell 50 Five-Year Treasury Note futures contracts at 112.025, which order was routed by computer from Chicago, Illinois, to London, England, for matching with a corresponding order to purchase those futures contracts at that price;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX
## (Wire Fraud)

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as if fully set out in this count.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

**EDWARD C. SARVEY and**
**DAVID G. SKLENA**

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate and foreign commerce, certain wirings, signs and signals, namely, defendant SKLENA's e-cbot order # 8264455018 to sell 50 Five-Year Treasury Note futures contracts at 112.015, which order was routed by computer from Chicago, Illinois, to London, England, for matching with a corresponding order to purchase those futures contracts at that price;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN
(Commodity Fraud)

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as if fully set out in this count.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> EDWARD C. SARVEY and
> DAVID G. SKLENA,

defendants herein, being members of the CBOT, a contract market, in connection with an order to make and the making of a contract for the sale of Five-Year Treasury Notes, a commodity in interstate commerce, for and on behalf of another person, and on and subject to the rules of the CBOT, did knowingly cheat and defraud and attempt to cheat and defraud said person in connection with the execution of the customer orders that comprised the 2,474 futures contracts they traded noncompetitively;

In violation of Title 7, United States Code, Sections 6b(a)(1)(i) and 13(a)(2).

## COUNT EIGHT
(Noncompetitive Futures Contract Trading)

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as if fully set out in this count.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> EDWARD C. SARVEY and
> DAVID G. SKLENA,

defendants herein, willfully engaged in purchases and sales of Five-Year Treasury Note futures contracts that were not executed openly and competitively by open outcry in the CBOT trading pit in violation of CFTC Rule 1.38(a); to wit: defendant SARVEY sold to defendant SKLENA 2,274 futures contracts at a price of 111.065;

In violation of Title 7, United States Code, Section 13(a)(5).

## COUNT NINE
(Noncompetitive Futures Contract Trading)

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as if fully set out in this count.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> EDWARD C. SARVEY and
> DAVID G. SKLENA,

defendants herein, willfully engaged in purchases and sales of Five-Year Treasury Note futures contracts that were not executed openly and competitively by open outcry in the CBOT trading pit in violation of CFTC Rule 1.38(a); to wit: defendant SKLENA sold to defendant SARVEY 485 futures contracts at a price of 111.070;

In violation of Title 7, United States Code, Section 13(a)(5).

## COUNT TEN
(Noncompetitive Futures Contract Trading)

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as if fully set out in this count.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD C. SARVEY,

defendant herein, willfully engaged in purchases and sales of Five-Year Treasury Note futures contracts that were not executed openly and competitively by open outcry in the CBOT trading pit in violation of CFTC Rule 1.38(a); to wit: defendant SARVEY sold to Trader A 100 futures contracts at a price of 111.065;

In violation of Title 7, United States Code, Section 13(a)(5).

## COUNT ELEVEN
(Noncompetitive Futures Contract Trading)

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as if fully set out in this count.

2. On or about April 2, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD C. SARVEY,

defendant herein, willfully engaged in purchases and sales of Five-Year Treasury Note futures contracts that were not executed openly and competitively by open outcry in the CBOT trading pit in violation of CFTC Rule 1.38(a); to wit: defendant SARVEY sold to Trader B 100 futures contracts at a price of 111.065;

In violation of Title 7, United States Code, Section 13(a)(5).

## FORFEITURE ALLEGATION

The SPECIAL FEBRUARY 2008-1 Grand Jury further alleges:

1. The allegations in Counts One through Six of this indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of their violations of Title 18, United States Code, Section 1343, as alleged in Counts One through Six, defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title, and interest he may have in any property constituting, and derived from, proceeds he obtained directly or indirectly as the result of such violations.

3. The interests of defendant subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), include the sum of at least $2,100,000.

4. If any of the forfeitable property described above, as a result of any act or omission by defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c);

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON


_____
UNITED STATES ATTORNEY